UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v().                                    Case No: 15-20522
                                       Hon: AVERN COHN

MATTHEW KUPPE,

    Defendant.
_____/

**MEMORANDUM AND ORDER**
**VACATING ORDER OF DETENTION (Doc. 10)**

Before the Court is defendant's motion to vacate the order of detention entered in this criminal case on August 18, 2015 (Doc. 10), following a hearing before a magistrate judge on a complaint. Subsequent to the order of detention defendant was indicted on six (6) counts, as follows:

1.     Production of Child Pornography, 18 U.S.C. § 2251(a)
       (Counts 1, 2 and 3)

2.     Distribution of Child Pornography, 18 U.S.C. § 2252A(a)(2)
       (Count 4)

3.     Receipt of Child Pornography, 18 U.S.C. § 2252A(a)(2)
       (Count 5)

4.     Possession of Child Pornography, 18 U.S.C. § 2252A(a)(5)(B)
       (Count 6)

A description of the charged conduct is described in the Complaint (Doc. 1) and in several other papers in the record, and need not be repeated here.

Since there is no evidence in the record suggesting that defendant is a risk of flight, the Court can detain the defendant only if the government has established by clear and convincing evidence that defendant is a danger to the community. On the record before the Court, and in considering the arguments for and against detention, the Court finds that under the Additional Conditions of Release which are attached as Exhibit A, along with the Standard Conditions of Release in the record, that the government has not established by clear and convincing evidence that he is a danger to the community, and therefore the defendant is not to be detained.

Accordingly, the Order of Detention (Doc. 10) is VACATED, and the defendant is RELEASED, subject to the Standard Conditions of Release in this District and the Additional Conditions of Release in Exhibit A, attached. The reasons follow.

### B.

#### 1.

There is a presumption favoring pretrial release. Pretrial release is the norm, not the exception. As a defendant proceeds to trial, and indeed during the course of a trial, defendant is presumed innocent.

#### 2.

In a pretrial detention hearing the government's burden is to establish by clear and convincing evidence that no conditions of release will reasonably assure the safety of the community. The issue in a pretrial detention hearing is whether or not releasing a defendant would pose a danger to the community that would not exist if the defendant is detained.

3.

In determining whether or not the government has met its burden, the Court must consider the following:

>  (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
>
>  (2) the weight of the evidence against the person;
>
>  (3) the history and characteristics of the person, including
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and
>
>  (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

C.

1.

The offenses charged are extremely serious. The offenses, however, are not for crimes of violence, nor do they involve a narcotic drug.

2.

As to the weight of evidence, it appears that as to Counts 4 and 5, the distribution and receipt of pornography, it is rather strong. However, as to Counts 1, 2

and 3, production of child pornography, there is some ambiguity. Child pornography is generally defined as a

> . . .visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct.

18 U.S.C. § 2256.

Here the children photographed were not engaged with other persons and the children did not know that they were being photographed. Defendant is an atypical producer, if in fact he is a producer as defined by law.

3.

Defendant's personal history and characteristics as described in the statute are positive.

4.

The nature and seriousness of the danger to any person or the community which would be posed by defendant's release, as will be explained, is minimal.

D.

1.

In the Eastern District of Michigan, 70% of all of the offenders charged are typically released; only 30% are detained. Of those released, less than 2% re-offend while on release. As to sex offenders, 50% of those charged are released. As to those released, less than 2% re-offend while on release.

2.

There have been four (4) psychological assessments of defendant by three (3)

4

different psychologists, each of whom assessed his potential danger to the community if he is released. Two (2) of the assessments are by a psychologist suggested by the government, at first retained and then appointed by the Court. This psychologist recommends release.

A report of a second psychologist retained by the government recommends detention. This report is flawed. The psychologist did not interview the defendant. The report includes circumstances that are significantly incorrect. The report does not display an awareness of that what is involved is pretrial release, and does not make mention of the conditions the Court advised the parties would be included in a release order.

The fourth assessment is by a psychologist appointed by the Court. This report displays a thorough understanding of the record, and recommends two (2) additional specific conditions which should be attached to a release order.

Particularly, this report states:

> As for home detention, even with safeguards as listed above (GPS, 24/7 parental supervision, no Internet, etc.), there is no absolute guarantee that a detainee would not remove a GPS, attempt to flee the jurisdiction, attempt to gain Internet access for sexual gratification, or attempt to lure an unsuspecting child. Based on [defendant's] psychological profile, however, the likelihood of any of these adverse events occurring, in my opinion, is extremely low. Under the proposed safeguards, any violation of bond would not be covert – fleeing, leaving the house unsupervised, or even accessing the Internet, would almost certainly be discovered with the resulting consequences being dire for him and for his family. Such a reckless decision would most likely be made by someone who was undisciplined, lacked impulse control, had grossly impaired judgment, had a long history of violating boundaries, and/or had little concern for his family. [Defendant], on the other hand, is a person who has lived

his life thus far, with the exception of the instant offense, well "within the lines." He has no history of criminal behavior and has demonstrated a level of self-discipline that allowed him to succeed throughout his academic career, including completion of his bachelor's degree in three years while participating in numerous extracurricular activities. He displays no evidence of the impulsivity or compromised behavioral control that would make gross violations of bond more likely, evidence such as a history of substance abuse, psychotic decompensation, or antisocial personality features. He has a strong emotional tie and loyalty to his family that would further deter him from putting them in jeopardy should he attempt to break bond.

In summary, in response to the referral question posed in [the] Amended Order for Examination, for reasons stated above, it is my opinion that it is highly unlikely that [defendant] would pose a danger to any other person or the community should he be released.

As defendant's counsel says:

Here, two separate and independent findings were reached by professionals with significant experience in the area of sex offender evaluation. Both of those individuals, who had the opportunity to meet with and test Kuppe, and being fully aware of the charges and the evidence in this case reached virtually identical conclusions; that there were circumstances that make "It is highly unlikely that Matthew David Kuppe would pose a danger to any person or the community should he be released pending trial."

E.

In assessing whether or not a pretrial detainee if released poses a danger to the community the significance of a psychological report cannot be underestimated. By comparison, the statutory provision regarding civil commitment of a defendant who has completed a prison term and has a mental disease or defect defines the phrases "sexually dangerous person" and "sexually dangerous to others" as follows:

"Sexually dangerous person" means a person who has engaged or attempted to engage in sexually violent conduct or child molestation and who is sexually dangerous to

6

others; and

"Sexually dangerous to others" with respect to a person, means that the person suffers from a serious mental illness, abnormality, or disorder as a result of which he would have serious difficulty in refraining from sexually violent conduct or child molestation if released.

A judge required to make an assessment of whether a person to be released is a danger is specifically authorized to order a psychiatric or psychological examination of the person to aid in the decision of whether or not to allow release or continue confinement.

F.

1.

The government's arguments against release are based on the charges and on speculation and conjecture regarding the defendant's conduct should he be released. As to the conditions of release, the government seems to say there is a high probability he will wilfully violate them.

2.

The government also points to the portion of the psychological report on which the Court relies "as placing" defendant in the Moderate-High Range Assessment of Sex Offender Risk. This emphasis ignores the observation that this assessment is "based on the assumption that [defendant] was released on the street today <u>without or with minimum supervision</u>, and [does not] factor in any potential ameliorating effects resulting from effective treatment. . . ."

7

3.

Again, as defendant's counsel puts it:

> The scare scenario offered by the Government is that if released on bond even under the numerous strict controls being proposed, no combination of conditions would prevent Kuppe from going out and engaging in behavior far beyond what he is alleged to have done to date. Kuppe's universe has been completely upended since his arrest. The same goes for his parents. The notion that he is likely to engage in offensive conduct while on bond is not based on a rationale view of Kuppe at present or his present circumstances.

4.

The government has not established by clear and convincing evidence that the community will be endangered in the release of defendant.

G.

In vacating the detention order and approving release of the defendant, the Court is not indifferent to the concerns expressed in media accounts of the community reaction when the charges against defendant were made public several months ago. What must be kept in mind, is:

- the presumption of innocence
- that pretrial release is the norm
- the government's obligation to show by clear and convincing evidence that defendant poses a danger to the community if released.

Considering all that has been said above, the Court's judicial obligations requires release. The Additional Conditions of Release which are described in Exhibit A assure that a release is the proper course to follow.

H.

One last comment.

Media accounts of this case of October 12, 2015, relate that investigators in Oakland County, Michigan, could not find evidence of criminal wrongdoing at the state level by the defendant. This is of significance in light of speculation that defendant has committed a touching offense.

SO ORDERED.

_____
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: November 24, 2015